

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

December 31, 1956

Honorable Jack N. Fant
County Attorney
El Paso, Texas

Opinion No. S-224

Re: Validity of a clause in a
contract between general
contractors and labor un-
ions whereby the contractors
agree not to sublet any part
of a contract to any sub-
contractor who will not
agree to observe the mini-
mum wage and classification
practices set out in the
general contract.

Dear Mr. Fant:

You have requested the opinion of our office con-
cerning the validity of a provision in an agreement between
an association of trades councils and an association of gen-
eral contractors which would attempt to bind any subcontractor
to observe the minimum wages and wage classifications set out
in the base contract. The contract provision reads as fol-
lows:

"The contractor agrees as a term and condi-
tion of employment that he will not sublet or
contract out any building or construction work
of any kind unless the sub-contractor to whom
work is sub-let, or subcontracted to, shall ob-
serve as minimum conditions the wage and classi-
fication practices provided in this agreement."

The specific inquiry involves (1) whether such con-
tract provision violates the applicable Texas antitrust stat-
utes, Articles 7426 and 7428, and the Texas Right to Work Law,
Article 5207a, Vernon's Civil Statutes, and (2), whether the
Attorney General or the County Attorney is authorized to pro-
hibit the application of this clause and declare the contract
void.

It should be pointed out in the beginning that labor
unions are subject to the operation of the Texas antitrust laws,
Article 5154 specifically providing that Article 5153, giving
labor unions the right to induce or attempt to induce by peace-
able and lawful means any person to accept certain employment

or to refuse to enter any pursuit or quit or relinquish any particular employment or pursuit in which such person may then be engaged, shall not prohibit the application of the antitrust laws of the State.   In the case of Best Motor Lines v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Local No. 745, et al., 150 Tex. 95, 237 S.W.2d 589 (1951), Justice Smith made the following statement:

> "The Texas antitrust statutes are valid
> laws and all persons are subject thereto, and
> the courts have the power to enjoin acts and
> conduct in violation thereof.   Labor unions
> are not excepted even though there exists a
> labor dispute and the picketing is peaceful."

There follows in the opinion a full discussion by Justice Smith of the many holdings of both the Texas and United States Supreme Courts upholding the application of the antitrust statutes to labor unions.

The pertinent portions of Article 7426, Texas Revised Civil Statutes, are as follows:

> "A 'Trust' is a combination of capital,
> skill or acts by two or more persons, firms,
> corporations or associations of persons, or
> either two or more of them for either, any or
> all of the following purposes:

> ". . . to create or carry out restrictions
> in the free pursuit of any business authorized
> or permitted by laws of this State."

It is our opinion that the combination formed by the above contract provision between the association of trades councils and the association of general contractors constitutes a "trust" under the wording of this statute in view of the scope and effect of the above quoted portion of the agreement entered into between these two parties.   Under the terms of the contract the contractor agrees not to contract with a subcontractor who does not or will not observe as minimum conditions the minimum wage and job classification practices provided for in the base agreement between the trades councils and the general contractors.   In this respect a restriction, conditional though it may be, is placed upon the business of the subcontractors who are not presently conforming to union standards and who are working with or doing business with the members of the association of general contractors.

The necessary result of this provision is to force the non-conforming subcontractor to pay higher wages and observe different wage classifications from those which he customarily operates under, thereby increasing the costs of his operations. The provision ultimately impels the hiring of union labor by the subcontractor and thereby constitutes another restriction on the subcontractor's business contrary to law. The provision further limits the non-conforming subcontractor's field of operation and the customers with whom he may deal. If the contractors observe the contract, then the non-union subcontractor cannot do business with any of the general contractors who are members of the association because of the terms of the contract. The contract amounts to a boycott by the trades council and the association of general contractors against a subcontractor in the area who does not conform to union practices. As a result the contractor's business is restricted within the contemplation of Article 7426, and since it is presumed that the parties intended the result of their actions, a violation of Article 7426 appears.

The pertinent sections of Article 7428 are as follows:

"Either or any of the following acts shall constitute a conspiracy in restraint of trade:

". . .

"3. Where any two or more persons, firms, corporations or associations of persons shall agree to boycott, or enter into any agreement or understanding to refuse to . . . use or work with any goods, wares, merchandise, articles or products of any other person, firm, corporation or association of persons; . . ."

It is our opinion that the above contract provision is violative of this provision of Article 7428, and that the alliance, agreement, or combination between the association of trades councils and the association of general contractors constitutes a conspiracy in restraint of trade under this article. Undoubtedly the parties are included under the first portion of Section 3 as being associations of persons and under the terms of the above provision they have agreed to boycott the non-conforming subcontractors, and have agreed to refuse to use their products or the products of their labor. It would make no difference that the subcontractor could free himself from the provisions of this contract by conforming to

the union wage standards and job classification practices. The agreement entered into encompasses the forbidden purposes set out in the third section of Article 7428, thereby constituting a conspiracy in restraint of trade.

As stated above, the effect of this contract is to force subcontractors to hire union labor or to observe union standards and job classifications, but it is apparent that the ultimate purpose of the provision in the contract is to force a union labor requirement upon the subcontractors who are not parties to the agreement. Your attention is called to Article 7428-1, which is as follows:

"Art. 7428-1  Agreements denying right to work because of union membership or non-membership.

"It shall constitute a conspiracy in restraint of trade for any employer and any labor union or labor organization or other organization to enter into any agreement or combination whereby persons are denied the right to work for an employer because of membership or non-membership in such union, labor organization or other organization; or whereby such membership or non-membership is made a condition of employment or of continuation of employment by an employer."

This article specifically defines a conspiracy in restraint of trade as being an arrangement whereby persons are denied the right to work because of non-membership in a union. The effect of the above quoted agreement is to do exactly that. The Legislature has, in this statute, made explicit its intentions formerly evidenced by Article 7428, and specifically defines a conspiracy in restraint of trade as encompassing such agreements as the contract provision here under consideration.

Article 5207a reads as follows:

"Art. 5207a.  Right to bargain freely not to be denied; membership in labor union

"Section 1.  The inherent right of a person to work and bargain freely with his employer, individually or collectively, for terms and conditions of his employment shall not be denied or infringed by law, or by any organization of whatever nature.

"Sec. 2. No person shall be denied employment on account of membership or non-membership in a labor union.

"Sec. 3. Any contract which requires of prescribes that employees or applicants for employment in order to work for an employer shall or shall not be or remain members of a labor union, shall be null and void and against public policy. The provisions of this Section shall not apply to any contract or contracts heretofore executed but shall apply to any renewal or extension of any existing contract and to any new agreement or contract executed after the effective date of this Act."

It is our opinion that this contract provision violates Section 1 of Article 5207a and, depending on its practical application, could violate the second and third profisions of Article 5207a. The contract above quoted provides that the association of general contractors shall pay certain wages and observe certain job classifications with regard to the subcontracting of work on their jobs. In making such an agreement they have agreed to pay a certain minimum and definite amount, thereby depriving the people who work for a subcontractor of the right to bargain freely with their employer as to their wages and working conditions. Because of this contract an employee could not work for a subcontractor engaged in work for a contractor-member of the association of general contractors for less than the union wage. The right to bargain freely with one's employer includes the right to work for less than a certain sum and at a lower job classification than ordinary, as well as the right to bargain for higher wages and better job classifications. In this respect the rights of the employees of the subcontractors concerned with this agreement have been infringed within the contemplation of Article 5207a.

It should be noted that this prohibition of Section 1 of Article 5207a applies to "any organization of whatever nature." This provision is broad enough to include the association of trades councils or the association of general contractors, and both would be guilty of a violation of this statute if the above contract were entered into and carried out.

Our position is substantiated in a decision by a trial examiner for the National Labor Relations Board March

19, 1956, in Associated General Contractors, reported in Volume 5, page 50-392, C.C.H. Labor Law Reports, Section 50,165. In this report the examiner struck down a sub-contractor's clause in a contract between a labor union and an association of general contractors which imposed upon subcontractors the terms of that agreement. The examiner said, among other things, that the contract infringed upon the workers' statutory right to choose their own bargaining agent, and ignored the guarantee of equal job opportunities given to the subcontractor's employee by law. It seems that the situation is analogous to that here in question. The contract above sets out the minimum wages and the job classifications for the employees of the subcontractors who were not parties to the agreement and were not concerned at its inception. Therefore, they have been precluded from bargaining with their employer for the terms and conditions of their employment and have been deprived of the right to choose their own bargaining agent.

It is possible that the practical application and operation of the contract provision would be to create a closed shop or union shop within the prohibition of Sections 2 and 3 of Article 5207a, but at present the facts submitted to us do not authorize the conclusion that this is a necessary result of the contract provision. Employees might conform to the specifications of the contract and yet not be union members. If the contract did result in the hiring of only union labor because of a large differential between wages paid by non-union contractors and union contractors, then the provisions of this contract could violate Sections 2 and 3 of this article. Such violation, of course, would depend on subsequent determinations of facts in the context and locality of the contract.

It should be noted that the courts in Texas which have considered the application of Article 5207a have pointed out that it is the purpose of the contract or action on the part of management or labor to create a situation in violation of Article 5207a which is proscribed by the statute. On the facts submitted to us we cannot say that it is the unequivocal purpose of the trades council and the association of general contractors to cause a violation of Sections 2 and 3 of Article 5207a. Construction and General Labor Union v. Stevenson, 148 Tex. 434, 225 S.W.2d 958 (1950); Sheet Metal Workers Local No. 175 v. Walker, 36 S.W.2d 683 (Tex. Civ.App. 1951, error ref.)

Turning now to your second question as to whether the Attorney General or a County Attorney may enforce the provisions of Articles 7426, 7428, and 5207a, V.C.S., we find that Article 5199, V.C.S., provides as follows:

"Each person, company or corporation, who shall in any manner violate any provision of this chapter shall, for each offense committed, forfeit and pay the sum of one thousand dollars, which may be recovered in the name of the State of Texas, in any county where the offense was committed, or where the offender resides, or in Travis County; and it shall be the duty of the Attorney General, or the district or county attorney under the direction of the Attorney General, to sue for the recovery of the same."

Included in "any provision of this chapter" is Article 5207a. Thus the County Attorney would be authorized to enforce the penalty provisions of this chapter under the direction of the Attorney General. This authorization applies only to the penalty provisions and would not seem to include other remedies.

Article 7436, V.C.S., provides for penalties which may be imposed for violations of Articles 7426 and 7428, and again, under this statute, the Attorney General or the District Attorney or County Attorney, under the direction of the Attorney General, has the duty to enforce the recovery of same.

Articles 7426 and 7428, V.C.S., have as companion statutes in the Penal Code Articles 1632 and 1634, V.P.C. Article 1635 of the Penal Code provides that a violation of these statutes is a felony and provides for imprisonment from two to ten years. Enforcement of these penal statutes would be according to the regular duties of the County Attorney, and Article 1636, V.P.C., provides that the Attorney General or the District or County Attorney may compel witnesses to testify in courts of inquiry. There seems to be no statute authorizing the Attorney General to prosecute criminal violations of antitrust statutes.

In addition to answering your questions by this opinion, we would like to authorize you to bring action on such contracts under the above stated statutes, and would assure you of our full cooperation in such a suit.

## SUMMARY

A contract between an association of general contractors and an association of trades councils providing that the members of the contractor's association shall not subcontract work unless the subcontractor shall observe the minimum wage scales and work classifications provided in said contract, violates Section 1, Article 7426, V.C.S., Section 3, Article 7428, V.C.S., and Article 5207a, V.C.S., and either the Attorney General or the County Attorney, under the direction of the Attorney General, may sue to recover the penalties for violations of the above articles as provided in Articles 5199 and 7436, V.C.S.

APPROVED:

J. Fred Jones
State Affairs Division

John Ben Shepperd
Attorney General

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By: John Minton
John Minton
Assistant